B. A. SANDS *et al.*

*v.*

JOHN W. KAGEY.

*Filed at Springfield April 2, 1894.*

1. EJECTMENT—*legal title and right to possession, essential to recovery.* The general rule is, that in ejectment the legal title must prevail. But such is not always the case. The landlord, though the owner of the fee, can not recover against his tenant occupying under a lease, where there has been no forfeiture of the conditions of the lease.

2. So an assignee of a note secured by mortgage, in possession of the mortgaged premises, can not be turned out of possession in an action of ejectment brought by the mortgagee. An ejectment can not be maintained against an occupant of real estate so long as he is lawfully in possession, nor can the holder of the legal title recover if the legal right to the possession is in another.

3. The action of ejectment proceeds for the possession of the premises, claiming that they have been unlawfully entered into and unjustly withheld. Facts which go to disprove these make a legal defense.

4. It has been held that where a party has entered into possession under a contract of purchase, made valuable improvements, paid taxes, exercised acts of ownership over the property and paid the amount contracted to be paid, these are facts which may be proven, and amount to a defense in an action of ejectment brought by the vendor against the vendee.

5. In 1854 the owner of a tract of land gave a bond to a railway company for the conveyance of a strip for a right of way as soon as the line of the road should be located, and authorizing the company to enter and occupy. In 1872 the railway company took possession of the land without any objection by the owner of the legal title, and complied with its contract, and used the right of way up to 1891, when a grantee of the original owner brought ejectment: *Held,* that the plaintiff could not recover.

6. POSSESSION—*notice of equities.* The possession by a railway company of its right of way, by operating its trains over the same, is notice to the world of the title or equities held by such company.

7. LACHES—*who may not complain.* A railway company, eighteen years after the date of a bond by a land owner to convey it a right of way, took possession and constructed its track, etc., without objection by the obligor of the bond, who was still the owner of the land: *Held,* that a grantee of the owner could not set up and rely on the *laches* of

the railway company, as he had no right until long after the company entered into possession.

8. PRACTICE—*waiver of jury—motion for new trial—whether necessary.* Where a jury is waived, and a cause is tried by the court alone, no motion for a new trial is required. If the bill of exceptions shows that the defendants excepted to the judgment rendered by the court in favor of the plaintiff, this is all that is required to entitle them to review the judgment on appeal or writ of error.

.APPEAL from the Circuit Court of Piatt county; the Hon. FRANCIS M. WRIGHT, Judge, presiding.

This was an action of ejectment, brought by John W. Kagey; against B. A. Sands and R. B. F. Pierce, trustees, operating the Indianapolis, Decatur and Springfield railroad, to recover a strip of land fifty feet wide off the south end of the east half of the north-east quarter, and fifty feet off the north end of the west half of the south-east quarter, of section 31, all in township 16, north, range 6, east of the third principal meridian, in Piatt county,.Illinois, it being a strip occupied as right of way for a railroad, by the Indiana and Illinois Central Railroad Company and its successors, since 1872.

The following is an agreed state of facts upon which a trial before the court without a jury was had, a jury having been waived:

"For the purpose of this second trial of this cause, it is agreed by the attorneys of the respective parties that Kagey, the plaintiff, shows a regular, perfect chain of title from the government, through John S. Hayward, by regular conveyances of the fee simple title, without reserving the railroad right of way in any of the deeds down to the plaintiff, in all the premises in controversy; that on July 2, 1891, plaintiff made demand, in writing, for the immediate possession of the premises in controversy, and that said notice was served upon the agent of the defendants by delivering to him a true copy thereof on said date; that this suit was commenced on Janu-

ary 23, 1891, no other notice to quit having been given; that on the 15th day of March, A. D. 1854, the same John S. Hayward, patentee, and his wife, gave to the Indiana and Illinois Central railroad their bond to convey, for the right of way, one hundred feet through the north half of section 31, township 16, north, range 6, east of the third principal meridian, being a part of the premises in controversy, as shown by said bond, which is admitted in evidence; that the Indiana and Illinois Central Railroad Company commenced work at building its railroad over said land on November 2, 1872, and built its railroad, and has since occupied the strip in controversy for right of way; that defendants are the legal successors of said Indiana and Illinois Central railroad, and claim under them, through said bond, as such successors; that both parties, plaintiff and defendants, have paid taxes on said strip of land since their occupancy of the same; that plaintiff and his grantees, back to the patentee, Hayward, have paid taxes on said lands since date of entry, in 1854. It is also agreed that John S. Hayward did not enter the lands in the south-east quarter of section 31, township 16, north, range 6, east, until the 1st day of May, 1854; that said lands were used as a right of way, when purchased by plaintiff, were not fenced, and were prairie; that the right of way is located on or near the line between the north half and south half of said section 31, township 16, north, range 6, east of the third principal meridian, and it is agreed that all deeds are admitted in evidence on this trial. It is also agreed that the center line of section 31, township 16, range 6, and section 36, township 16, range 5, Piatt county, Illinois, is just south of the south end of the ties of said Indianapolis, Decatur and Springfield railroad track."

The defendants also read in evidence a bond, under seal, executed by John S. Hayward and wife on the 15th day of March, 1854, in which they covenanted as follows: "In consideration of the probable location of the Indiana and Illinois Central railroad over and upon the premises hereinafter

described, and one dollar to them·in hand paid by said company, do hereby, for themselves, their heirs, executors, administrators and assigns, covenant and agree to and with the Indiana and Illinois Central Railway Company, to convey to said company, by a good and sufficient deed of quitclaim, with warranty against any claiming by or·under them, at any time within one year from the date hereof, the right of way, of the width of one hundred feet, as the same shall be located through the lands and premises now owned and held by them, and described as follows: the same off of the south line of the north half of section thirty-one (31), township 16, north, range 6, east, Piatt county, Illinois, with full power, on the definite location of said road, to enter upon the said lands and premises of the width aforesaid, and to occupy, use and control the same, with all the rights privileges, profits and appurtenances of every kind, as in fee simple," etc.

The defendants also read in evidence a certificate, dated February 10, 1891, from Charles W. Pavey, Auditor of Public Accounts of the State of Illinois, certifying that the records of the United States land office, formerly located at Vandalia, Illinois, but now in his custody in pursuance of law, show that the north-east quarter and the south-east quarter of section 31, in township 16, north, range 6, east of the third principal meridian, were entered on the 22d day of March, 1853, by John S. Hayward.

Upon the evidence thus introduced, the court rendered judgment against the defendants, and for the purpose of reversing that judgment they have appealed to this court.

Messrs. Lodge & Hicks, for the appellants:

The action of ejectment proceeds on the theory of an unlawful entry and unjust detention. Any facts that go to disprove them make a good defense. *Railroad Co.* v. *Karnes*, 101 Ill. 402.

The relations between a railroad company and one having contracted to convey the right of way in consideration of the

construction of the railroad over his lands, are pretty fully discussed in *Railroad Co.* v. *Hay,* 119 Ill. 493.

The bond was not recorded, but the operating of a railroad over the strip fifty feet wide, now claimed by the plaintiff, off the south side of the north-east quarter, was as good notice to the plaintiff, at the time of his purchase, as the record of the bond would have been. He was bound to take notice of the rights of the defendant when he purchased. *Crawford* v. *Railroad Co.* 112 Ill. 314; *Bank* v. *Dayton,* 116 id. 257; *Bank* v. *Sperling,* 113 id. 273; *Turpin* v. *Railroad Co.* 105 id. 11.

In this case, the stipulation shows that the Indiana and Illinois Central railroad had occupied the strip in controversy for the right of way since November, 1872; that the defendants are its legal successors, and claim under and through the bond as such successors. This they may lawfully do. *Railway Co.* v. *Needles,* 85 Ill. 462.

The grant of a right of way to a railroad company is not revocable after it is acted on. *Platt* v. *Railroad Co.* 65 N. C. 74; *Russell* v. *Hubbard,* 59 Ill. 335; *Morris* v. *Railway Co.* 76 id. 522; *Turpin* v. *Railroad Co.* 105 id. 11, and cases cited.

We submit that the settled rule of this court is, that a contract for a right of way, acted on and performed by the railroad company, which is in possession, operating the railroad, is a good bar to ejectment by the former owner or his grantees, and therefore the plaintiff can not maintain this action. *Kirby* v. *Railroad Co.* 109 Ill. 412; *Railroad Co.* v. *Hay,* 119 id. 493; *Railroad Co.* y. *Karnes,* 101 id. 402; *Turpin* v. *Railroad Co.* 105 id. 11.

An exception to the overruling of the formal motion for a new trial would have been of no avail, for the exception to the final judgment which is preserved in the bill of exceptions brings the whole case, on the law and evidence, before this court for review. No motion for a new trial was necessary. The court had passed on the evidence once, and the question is, did error intervene in its finding and final judgment.

8—150 ILL.

114                    Sands *et al. v.* Kagey.

*Metcalf* v. *Fouts,* 27 Ill. 110; *Mahony* v. *Davis,* 44 id. 288; *Jones* v. *Buffum,* 50 id. 277.

Mr. W. G. Cochran, for the appellee:

No exception was taken to the overruling of the motion for a new trial, and therefore no error can be assigned. *Martin* v. *Foulke,* 114 Ill. 206; *Daniels* v. *Shields,* 38 id. 197; *Gould* v. *Howe,* 127 id. 251; *Steffy* v. *People,* 130 id. 98.

Mr. Justice Craig delivered the opinion of the Court:

The bill of exceptions does not show that the defendants excepted to the decision of the court overruling a motion for a new trial, and it is claimed that this court, in the absence of that fact from the bill of exceptions, will not review the decision of the circuit court. Section 61 of the Practice act provides: "Exceptions taken to the decisions upon the trial of causes in which the parties agree that both matters of law and fact may be tried by the court, and in appeal cases, tried by the court without the intervention of a jury, shall be deemed and held to have been properly taken and allowed, and the party excepting may assign for error before the Supreme Court any decision so excepted to, whether such exception relates to receiving improper or rejecting proper testimony, or the final judgment of the court upon the law and evidence." Under this statute no motion for a new trial was required. The bill of exceptions shows that the defendants excepted to the judgment rendered by the court in favor of the plaintiff, and that was all that was required to entitle them to review the judgment on appeal or writ of error. Moreover, we regard the question settled by former decisions. *Metcalf* v. *Fouts,* 27 Ill. 113; *Mahony* v. *Davis,* 44 id. 289; *Jones* v. *Buffum,* 50 id. 278.

It is also contended, that as plaintiff established the legal title to the premises, he was entitled to recover although there might be an equity in the defendants. The general rule is,

that in ejectment the legal title must prevail. But that is not always the case. The landlord, although the owner of the fee, can not recover against his tenant occupying under a lease, when there has been no forfeiture of the conditions of the lease. So an assignee of a note secured by mortgage, in possession of the mortgaged premises, can not be turned out of possession in an action of ejectment brought by the mortgagor, as held in *Kilgour* v. *Gockley*, 83 Ill. 109. In the same case it was also held that ejectment can not be maintained against an occupant of real estate so long as he is lawfully in possession. So in *Cobb* v. *Lavalle*, 89 Ill. 331, it was held that a plaintiff in ejectment can not recover, although he has title, when the legal right to the premises was in another. In *Stow* v. *Russell*, 36 Ill. 20, it was held that the action of ejectment proceeds for the possession of the premises, claiming that they have been unlawfully entered into and injuriously withheld. Facts which go to disprove this make a legal defense. It was also held, where a party has entered into possession under a contract of purchase, made valuable improvements, paid taxes, exercised acts of ownership over the property, and paid the amount contracted to be paid, they are facts which may be proven, and amount to a defense in an action of ejectment brought by the vendor against the vendee. Here the vendee entered into possession under a bond for a deed, made valuable improvements, and the consideration for the premises described in the bond has been fully paid. The possession of the defendant being lawful, we perceive no principle under which the vendor, or a purchaser from the vendor, can recover in an action of ejectment. In other words, a vendee in possession under a written contract which he has fully performed, may hold the possession of the premises as against the vendor. *Fleming* v. *Carter*, 70 Ill. 288.

Some importance is sought to be placed on the fact that the railroad company delayed entering upon the land from 1854 to 1872. The vendor, so far as appears, never found

any fault with the vendee on account of the delay, and the delay is a matter that does not concern plaintiff, as he acquired no rights in the property until long after the railroad company entered into possession of the premises under the bond for a deed. The plaintiff was not an innocent purchaser. When he purchased, the defendant was in possession, and the possession was notice of the title held by the railroad company.

The judgment of the circuit court will be reversed and the cause remanded.

*Judgment reversed.*